617 A.2d 762

## DEPARTMENT OF PUBLIC WELFARE ex rel. Tia DESSUS, Appellant,

v.

### Bobby CHAMBERLAIN, Appellee.

Superior Court of Pennsylvania.

Submitted Sept. 21, 1992.

Filed Dec. 4, 1992.

Darlene O'Kane, Asst. Dist. Atty., Philadelphia, for appellant.

Bobby Chamberlain, pro se.

Before OLSZEWSKI, FORD ELLIOTT and HESTER, JJ.

OLSZEWSKI, Judge:

The Department of Public Welfare appeals the support order entered November 25, 1991, in the Court of Common

Pleas of Philadelphia County. We adopt the facts and procedural history of this case as set forth by the trial court:

[T]his matter arose before the Court on father's exceptions to a permanent hearing officer's report and recommendation of child support. Neither the mother nor the father was represented by counsel. Mother is presently 24 years old; father is 23. As mother receives public assistance, the Department of Public Welfare (DPW) was represented by an Assistant District Attorney. (ADA).... Upon an extensive review of the record for the purposes of writing this opinion, the Court now discovers that a significant issue of law and social policy was decided without briefs being filed or effective legal argument presented. To better explain the Court's decision in this matter, a detailed account of the history of this case has been included below. On February 22, 1991, mother visited the domestic relations branch of the Court and was given an appointment to return on April 4, 1991. The purpose of the scheduled appointment was clearly so that mother might file a complaint for child support against the putative father of her child, Kiarra, as all recipients of welfare are required to do. Although mother then failed to appear on April 4, 1991, the complaint was filed on behalf of the Department of Public Welfare *ex rel.* Tia Dessus.

\*     \*     \*     \*     \*     \*

On May 20, 1991, both father and mother appeared at a conference on this complaint for child support. Father acknowledged paternity of Kiarra. Mother reported that she was unemployed, and receiving welfare in the amount of $403.00 per month for herself and two children. Father stated that he earned $300.00 per week net, and that he could provide health insurance for the child through his employment. Although the hearing officer found that the support guidelines recommended support in the amount of $64.00 per week, father testified that he could only afford $50.00 per week. This was agreed to as a temporary support order, pending the hearing before the permanent hearing officer. In determining an appropriate amount of

support, the permanent hearing officer attributed no earnings or earning capacity to mother. He then assigned father the total obligation to pay the amount of support the guidelines recommended, calculated as a percentage of father's income. Therefore, he proposed that father pay $71.00 per week for Kiarra's support, or $307.00 per month. Father took exceptions to the proposed order, apparently disputing the amount of support recommended as too high. In his exceptions, father also indicated that he would rather take Kiarra off public assistance and provide for her directly, as he had been doing since she was born. He stated that he had believed that mother's DPW benefits had been terminated when Kiarra was born. [The exceptions were heard on November 25, 1991.] After struggling to determine why father objected to the permanent hearing officer's proposal, the Court realized that father wanted the child removed from welfare so that he could support the child directly. He testified that he would provide for the child, and mother confirmed that he had been doing so all along. However, the Court has been advised in this and many similar cases that DPW will not remove one child from welfare when the mother has another child continuing to receive benefits. Therefore, the remedy father requested was impossible. The Court then made a determination on the record, and in the presence of the ADA, as to the actual expense DPW was incurring in supporting this child. The Court was careful to include the "pass-through benefits"— the $50.00 DPW would pay mother per month as long as father was contributing at least that much in support. The ADA was then advised that the Court intended to order father to reimburse DPW for every cent the department spent for Kiarra. Father was ordered to continue carrying Kiarra on his health insurance. The result was that the Court ordered father to pay $71.00 bi-weekly to DPW through the Bureau of Accounts to reimburse DPW for supporting Kiarra, plus $9.00 weekly on the arrears.

(Trial court opinion, 5/13/92, at 1–4.)

On this appeal, the Commonwealth alleges that the trial court abused its discretion in formulating the support order

set forth above. In its opinion, the court reasoned that it deviated from the support guidelines because any increase in support for Kiarra would not benefit her. The court found that whether father made monthly payments of $50.00 or $307.00 (pursuant to the guideline-mandated amount of support), Kiarra would receive the same amount from DPW. The court found that because father's payment of support is made to DPW and not to the family itself, any increased order of support would inure to DPW's and not Kiarra's benefit. Accordingly, the court concluded that the purpose of the support guidelines would not be served by ordering father to pay the guideline-mandated support amount. The Commonwealth argues that this was error.

The Commonwealth contends that the trial court erred because it based the support order on the amount expended by DPW on Kiarra, instead of entering findings of fact or calculations on the record in accord with statutory and case law. The Commonwealth argues that it is impossible for the needs of any child to be met solely by public assistance, and that the hearing officer's order of support according to the guidelines was proper in an effort toward meeting Kiarra's needs.

Citing only the Code of Federal Regulations (45 CFR 302.51) and *Essentials for Attorneys in Child Support Enforcement,* a 1988 Department of Health and Human Services publication, the Commonwealth contends that the court's findings regarding the disposition of father's support contribution were incorrect. It argues that the procedure actually utilized by DPW is a comparison of the amount of the support order and the amount of the DPW grant. If the amount of the support order exceeds the amount of the DPW grant, then, the Commonwealth claims, DPW must distribute the difference between the grant amount and the order to the family. The Commonwealth notes, however, that DPW is able to retain any monies in satisfaction of amounts DPW paid to the family for any prior period. We are unable to determine, on the basis of the authority provided in the Commonwealth's brief, whether this practice has been mandated in Pennsylva-

nia.[1] The trial court in this case reasoned that any excess between the support order and the DPW grant was retained by the Commonwealth. If the procedure described by the Commonwealth is mandated in Pennsylvania, the court's rationale and resulting support order are in error.

The trial court acknowledged that this case involves significant issues of law and social policy, which the court decided without benefit of briefs or oral argument. We agree that a more extensive illumination of the issues presented by this appeal is warranted. For that reason, we remand this case for further proceedings consistent with this opinion. We also instruct that any support order fashioned by the court on remand be supported by specific factual findings and calculations on the record. Jurisdiction is relinquished.

---

1.  We note that any appeal concerning the propriety of DPW regulations is more properly before the Commonwealth Court. *See* 42 Pa.C.S.A. § 762.